## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:

POMPANO PROPERTY SOLUTIONS, LLC                    CASE NO.: 24-12395-PDR
                                                   CHAPTER 7

_____Debtor_____/

## TRUSTEE'S MOTION TO APPROVE SALE OF REAL PROPERTY LOCATED AT 5311 NORTHEAST 10TH AVENUE, DEERFIELD BEACH, FLORIDA 33064, AND OTHER RELATED RELIEF

Trustee, Sonya S. Slott ("**Trustee**"), by and through undersigned counsel, hereby moves this Court to approve the sale of real property located at 5311 Northeast 10th Avenue, Deerfield Beach, Florida 33064, pursuant to 11 U.S.C 363(b) and other related relief and states as follows:

1.      On March 13, 2024 (the "**Petition Date**"), Debtor commenced the instant bankruptcy case with the filing of a voluntary petition for relief under Chapter 7, Title 11 of the United States Bankruptcy Code.

2.      Sonya S. Slott is the duly appointed and acting Chapter 7 Trustee of the Debtor's bankruptcy estate (the "**Estate**").

3.      Pompano Property Solutions, LLC (the "**Debtor**") jointly with Pro Seo, LLC ("**Pro Seo**") are the title owners of a real property located at 5311 Northeast 10th Avenue, Deerfield Beach, Florida 33064 (the "**Property**"), more particularly described as follows:

> Lot 11, Block 2, PARK MANOR, according to the map or plat thereof as recorded in Plat Book 52, Page 10, Public Records of Broward County, Florida.

4.      On April 24, 2024, the Trustee filed an Application to Employ Jason Welt of Trustee Realty, Inc. as real estate broker (the "**Broker**") to the Trustee [ECF #34], which was granted by the Court [ECF #35].

1

5.     On June 20, 2024, the Trustee filed an adversary proceeding subject to §363(h) to sell Pro Seo's interest in the Property, Adv. Case No. 24-01328-PDR (the "**Adversary Proceeding**")

6.     Concurrently with the filing of this Motion, the Trustee has filed a motion for default judgment in the Adversary Proceeding.

7.     After the Broker listed and marketed the Property for sale, the Trustee received an offer to consummate a sale of the Property.

8.     The highest and best offer for the Property was from Charles Bain (the "**Purchaser**" or "**Bain**") for a proposed purchase price of $485,000.00. A true copy of the "As Is" Residential Contract for Sale and Purchase of the Real Property and all addendums (collectively, the "**Sale Contract**") are attached hereto as composite Exhibit "A".   The Purchaser is not an insider of the Debtor.

9.     This is the highest and best offer that the Broker has received, and in his professional experience in marketing real property in Florida, including in many previous cases before this Court, the offer is well in line with the current market prices for similar properties in the area.

10.     The Trustee, Broker, and Purchaser have agreed to the terms of the Sale Contract, the Primary material terms of which are as follows:

    a.   **Purchase Price**: $485,000.00;

    b.   **Terms**: As-is, where-is, with no representations or warranties of any type given by the Trustee, but free and clear of all liens, claims and encumbrances;

    c.   **Closing Date**: no later than 30 days after entry of Court order;

d. **Commission**: $29,100.00 the ("**Commission**") to the Broker, which equals 6% of the Purchase Price[1];

e. **Payment to Estate**: The net sale proceeds due to the Estate are roughly $36,179.02, subject to adjustment through closing, a total *not* including the additional sum of $4,850.00 to be recovered by the Estate as addressed in footnote 1 below.

f. **Financing contingency**- As of the time of filing of this Motion, the deadline for the financing contingency has passed.

g. **No sale contingency**-

h. **Subject to Bankruptcy Court approval**; and

i. **Subject to higher and better offers**.

### *Liens, Claims and Encumbrances Against the Property*

11.    Except as otherwise set forth in the Sale Contract, pursuant to section 363(f) of the Bankruptcy Code, the sale of the Pompano Beach Property shall be free and clear of any and all liens, claims, encumbrances, lis pendens, rights of possession, contracts, covenants, options or other rights to acquire any interest in the Property, interests and other liabilities, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise,

---

[1] Notably, Trustee Realty will be crediting back $4,850.00, 1% of its commission, directly to the Estate to further facilitate this proposed sale.

including without limitation, any right of setoff, recoupment, netting or deduction (collectively, the "**Liens and Encumbrances**").

12.    Furthermore, the estimated payoffs[2] necessary to satisfy the alleged Liens and Encumbrances against the Property, and the proposed treatment of same pursuant to the proposed sale, are set forth below:

| Claimant | Nature of Lien, Claim or Encumbrance | Amount | Proposed Disposition at Closing |
|---|---|---|---|
| **LL Capital, LLC** | **Mortgage recorded at instrument 119061796 and assignment of rents recorded at instrument 119061797** | **$315,480.98** | **$315,480.98 subject to adjustment and receipt of a proper payoff letter** |
| **City of Deerfield Beach** | **Orders of Imposition of Fine and Claims of Lien recorded in Instrument 11523308, 115329222, 115503890,115783908,and 116957163** | **$75,000.00** | **$75,000 to be held in escrow subject to the Trustee seeking abatement of the fines** |
| **K Construction, LLC** | **Notice of Commencement recorded in Instrument 119485311** | **$0.00** | **$0.00.** |

13.    Any other charges are comprised of normal and customary closing costs involved in a residential real estate transaction, as set forth in the ALTA Settlement Statement, which is as attached as Exhibit "B" and may be updated prior to the sale hearing and the closing of the sale.

### *Relief Requested*

14.    The Trustee requests that the Court approve the sale of the Property to the Purchaser, pursuant to 11 U.S.C. § 363(f), free and clear of any and all liens, claims and encumbrances, upon the terms set forth above. The Trustee also requests that the Court authorize the Trustee to enter into the Contract and approve the payment of the Commission to the Real Estate Broker.

---

[2] The amounts listed here are good faith estimates and will be updated at closing as official payoffs and estoppels are obtained.

15.    11 U.S.C. § 363(b) provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

16.    Additionally, 11 U.S.C. § 363(f) permits the Trustee to "…sell property under subsection (b) … of this section free and clear of any interest in such property of an entity other than the estate, only if –

    (1) Applicable non-bankruptcy law permits sale of such property free and clear of such interest;
    (2) Such entity consents'
    (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4) Such interest is in bona fide dispute; or
    (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest"

17.    Pursuant to §363(f)(2) or (f)(3), the Trustee may sell free and clear of the Liens and Encumbrances.

18.    Pursuant to the judgment entered in the Adversary Proceeding, the Trustee may sell the interest in Pro Seo in the Property subject to §363(h).

19.    Furthermore, the Trustee requests that at closing, the Purchaser is deemed to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m), provided that the Purchaser has complied with all requirements of the Contract.

20.    If there is a conflict between the terms of this Motion and the terms of the Contract then the terms of the Contract shall control.

21.    The Trustee, exercising her business judgment, believes that the sale of the Property to the Purchaser is in the best interest of the bankruptcy estate.

22.    The Trustee requests that the Court provide the Trustee with the authority to close the sale, disburse the sales proceeds as set forth in the ATLA Settlement Statement and execute

any and all documents necessary to consummate the closing including but not limited to a Trustee's Deed and Bill of Sale.

23.     The Trustee requests that the Court waive the 14-day stay period pursuant to Fed. R. Bankr. P. 6004(h) so that the sale may timely close.

WHEREFORE, the Trustee respectfully requests that the Court enter an order: (a) approving the sale of the Property to the Purchaser; (b) authorizing the Trustee to enter into the Contract; (c) approving the payment of the Commission to the Real Estate Broker; and (d) granting such other and further relief as the Court deems just and proper.

Dated:  November 26, 2024                    By: /s/  Zachary Malnik, Esq.
                                                 Zachary Malnik, Esq.
                                                 FBN 1010272

                                                 The Salkin Law Firm, P.A.
                                                 *Counsel to the Trustee*
                                                 P.O. Box 15580
                                                 Plantation, Florida 33318
                                                 954-423-4469

# EXHIBIT A

**"AS IS" Residential Contract**
**For Sale And Purchase**
THIS FORM HAS BEEN APPROVED BY
THE FLORIDA REALTORS AND THE FLORIDA BAR

**Trustee Realty Inc.**
Jason A. Welt



1  **PARTIES:** _Sonya Salkin Slott, Ch. 7 Trustee for Pompano Property Solutions LLC 24-12395-PDR_____ ("Seller"),
2  and _____**Charles Bain**_____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7      (a) Street address, city, zip: _**5311 NE 10TH AVE, DEERFIELD BEACH, FL 33064**_____
8      (b) Located in: _**Broward**_____ County, Florida. Property Tax ID #:_**4842 12 11 0270**_____
9      (c) Real Property: The legal description is _**PARK MANOR 52-10 B LOT 11 BLK 2**_____
10 _____
11 _____
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13     attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e)
14     or by other terms of this Contract.
15     (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16     which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17     purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18     and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19     television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20     keys, and storm shutters/storm protection items and hardware ("Personal Property").
21     Other Personal Property items included in this purchase are:_____
22 _____
23     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24     (e) The following items are excluded from the purchase:_____
25 _____

26 <div align="center">**PURCHASE PRICE AND CLOSING**</div>        485,000 _CB_
27 **2. PURCHASE PRICE** (U.S. currency):..............................................................$ ~~500,000~~
28     (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ..........$ 5,000 ~~5%~~
29     The initial deposit made payable and delivered to "Escrow Agent" named below
30     **(CHECK ONE):** (i)☐ accompanies offer or (ii)☒ is to be made within _**1**___ (if left blank,
31     then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32     SHALL BE DEEMED SELECTED.
33     Escrow Agent Name: _**Ross Hartog**__ TAMAR N HAMILTON PA ATTORNEY ATLAW _CB_
34     Address: _____ Phone:~~954-921-9920~~ (954) 507-4757
35     Email: _**Ross@PalmTitle.com**__ TAMAR@TAMARHAMILTONLAW.COM _CB_
36     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37     days after Effective Date ....................................................................$_____
38     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 _CB_
40     (d) Other:_**Additional Deposit Due After Court Approval**_ ...............$ 10,000 ~~5%~~
41     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42     transfer or other Collected funds (See STANDARD S)....................................$ ~~485,000~~ 470,000
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45     _**See Additional Terms**_____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46     Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47     the counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49     initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51     received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52     furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

Electronically Signed using eSignOnline™ [ Session ID : ████████-████-████-████-████████████ ]

30 Days  *SSS CB*

53 this Contract, the Closing shall occur on ~~15 Days After Entry Of Court Order~~ ("Closing Date"), at the time
54 established by the Closing Agent.

**5. EXTENSION OF CLOSING DATE:**

56 (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57 Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58 checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59 extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60 days.

61 (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62 unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63 extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

65 (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66 to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67 personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68 codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69 to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70 shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71 CLOSING OCCUPANCY BY BUYER.

72 (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73 subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74 Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75 shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76 within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77 occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78 election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80 and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall
81 not be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82 Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84 this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.
85 IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86 **FINANCING**

**8. FINANCING:**

88 ☐ (a) This is a cash transaction with no financing contingency.  *SSS CB*

89 ☒ (b) This Contract is contingent upon, within ~~20~~ (if left blank, then 30) days after Effective Date ("Loan
90 Approval Period"): (1) Buyer obtaining approval of a ☒ conventional ☐ FHA ☐ VA or ☐ other _____
91 (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☒ fixed or
92 adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30)
94 years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95 of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96 for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").

97 (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98 and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99 Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100 Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101 unless Rider V is attached.

102 Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103 be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104 but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105 and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106 (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107 mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108 of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24     © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.
Licensed under License and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**

Electronically Signed using eSignOnline™ [ Session ID : 68960864-0310-4806-9883-68d85804440 ]

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.
111     (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.
115     (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.
120     (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.
126     (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
132 ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133 ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9.  CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
136     (a)  **COSTS TO BE PAID BY SELLER:**
137 • Documentary stamp taxes and surtax on deed, if any     • HOA/Condominium Association estoppel fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)     • Recording and other fees needed to cure title
139 • Title search charges (if Paragraph 9(c)(iii) is checked)     • Seller's attorneys' fees
140 • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)     • Other:_____
141 • Charges for FIRPTA withholding and reporting
142     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11,
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
146     (b)  **COSTS TO BE PAID BY BUYER:**
147 • Taxes and recording fees on notes and mortgages     • Loan expenses
148 • Recording fees for deed and financing statements     • Appraisal fees
149 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)     • Buyer's Inspections
150 • Survey (and elevation certification, if required)     • Buyer's attorneys' fees
151 • Lender's title policy and endorsements     • All property related insurance
152 • HOA/Condominium Association application/transfer fees     • Owner's Policy Premium (if Paragraph
153 • Municipal lien search (if Paragraph 9(c)(ii) is checked)      9(c)(iii) is checked)
154 • Other:_____
155     (c)  **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents.  For purposes of this Contract "municipal lien search" means a

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24   © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.
Licensed to Alta Star Software and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**
Electronically Signed using eSignOnline™ [ Session ID : ████████-████-████-████-████████████ ]

165 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166 liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167 **(CHECK ONE):**
168 ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171 provider(s) as Buyer may select; or
172 ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173 services related to Buyer's lender's policy, endorsements and loan closing; or
174 ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176 continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177 reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178 continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not
179 be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180 search ordered or performed by Closing Agent.
181 (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184 (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☐ N/A shall pay for a home warranty plan issued by
185 _____ at a cost not to exceed $_____. A home
186 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193 be paid in installments **(CHECK ONE):**
194 ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195 Installments prepaid or due for the year of Closing shall be prorated.
196 ☒ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197 to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198 deemed selected for such assessment(s).
199 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201 (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202 Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203 **DISCLOSURES**

204 **10. DISCLOSURES:**
205 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208 radon and radon testing may be obtained from your county health department.
209 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210 does not know of any improvements made to the Property which were made without required permits or made
211 pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212 F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213 Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214 knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215 unpermitted improvements.
216 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217 desires additional information regarding mold, Buyer should contact an appropriate professional.
218 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24      © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.
Licensed to Alta Star Software and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**

Electronically Signed using eSignOnline™ [ Session ID : ████████-████-████-████-████████████ ]

221 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225 may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228 designation of Property.

229 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230 required by Section 553.996, F.S.

231 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232 mandatory.

233 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
235 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249 FIRPTA.

250 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255 building, environmental or safety code violation.

256 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259 IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**                     *CB*     10     *888*
261 (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ~~7~~ (if left blank, then 15)*
262 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274 *repairs and improvements required by Buyer's lender.*

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24     © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.
Licensed to Alta Star Software and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) ~~ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES: At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.~~

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

Electronically Signed using eSignOnline™ [ Session ID : 88983864-9398-4865-8683-8486f55604482 ]

331 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
332 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
333 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
334 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

335 **DEFAULT AND DISPUTE RESOLUTION**

336 **15. DEFAULT:**
337 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
338 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
339 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
340 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
341 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
342 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
343 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
344 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
345 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
346 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
347 Buyer may elect to receive return of Buyer's Deposit ~~without thereby waiving any action for damages resulting~~
348 ~~from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific~~
349 ~~performance.~~
350 This Paragraph 15 shall survive Closing or termination of this Contract.
351 **16.** ~~DISPUTE RESOLUTION: Unresolved controversies, claims and other matters in question between Buyer and~~
352 ~~Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled~~
353 ~~as follows:~~
354 ~~(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to~~
355 ~~resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph~~
356 ~~16(b).~~
357 ~~(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida~~
358 ~~Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").~~
359 ~~The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be~~
360 ~~sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16~~
361 ~~may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph~~
362 ~~16 shall survive Closing or termination of this Contract.~~
363 **17.** ~~ATTORNEY'S FEES; COSTS: The parties will split equally any mediation fee incurred in any mediation permitted~~
364 ~~by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in~~
365 ~~conducting the mediation.~~ In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
366 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
367 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

368 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

369 **18. STANDARDS:**
370 **A. TITLE:**
371 **(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
372 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
373 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
374 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
375 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
376 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
377 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
378 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
379 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
380 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
381 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
382 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
383 any violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall
384 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
385 with law.

Electronically Signed using eSignOnline™ [ Session ID :

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

(ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C.   INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.   TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a day on which a national legal public holiday is observed.

**G.  FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the right or obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24     © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.
Licensed to Alta Star Software and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

442 caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443 earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444 terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445 exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446 The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447 performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448 All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449 up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450 if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451 Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452 shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
453 **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457 Contract.
458 **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459 (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463 means.
464 (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468 the survey, flood elevation certification, and documents required by Buyer's lender.
469 (iii) **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury
470 Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471 shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472 Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473 required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474 Closing Agent's collection and report of said information to IRS.
475 (iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478 **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
479 **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
490 **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492 (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493 imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

Buyer's Initials __CB__ _____          Page **9** of **13**          Seller's Initials __SSS__ _____

Licensed to Alta Star Software and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**

Electronically Signed using eSignOnline™ [ Session ID : ████████-████-████-████-████████████ ]

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

499 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
500 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
501 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
502 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
503 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
504 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
505 maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
506 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
507 shall survive Closing.
508 **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
509 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
510 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
511 **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
512 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
513 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
514 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
515 cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
516 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
517 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
518 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the
519 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
520 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
521 **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
522 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
523 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
524 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
525 upon, nor extended or delayed by, such Exchange.
526 **O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT
527 EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This
528 Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in
529 interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and
530 delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party
531 shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail,
532 facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures
533 hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic
534 signatures, as determined by Florida's Electronic Signature Act and other applicable laws.
535 **P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
536 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
537 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification or change
538 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
539 to be bound by it.
540 **Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
541 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
542 rights.
543 **R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
544 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
545 **S.  COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including
546 Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing
547 Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent
548 until such amounts have been Collected in Closing Agent's accounts.
549 **T.  RESERVED.**
550 **U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
551 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
552 county where the Real Property is located.
553 **V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
554 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
555 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557 from the IRS authorizing a reduced amount of withholding.
558 (i)   No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563 to the IRS.
564 (ii)   If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566 reduced sum required, if any, and timely remit said funds to the IRS.
567 (iii)   If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569 received as of Closing, Buyer shall, at Closing,  withhold the applicable percentage of the amount realized by Seller
570 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574 (iv)   In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575 transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577 disbursement in accordance with the final determination of the IRS, as applicable.
578 (v)   Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579 8288 and 8288-A, as filed.
580 **W.  RESERVED**
581 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584 *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
585 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586 *Closing.*

587 **ADDENDA AND ADDITIONAL TERMS**

588 **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589 Contract (**Check if applicable**):

☐ A. Condominium Rider
☐ B. Homeowners' Assn.
☐ C. Seller Financing
☐ D. Mortgage Assumption
☐ E. FHA/VA Financing
☐ F. Appraisal Contingency
☐ G. Short Sale
☐ H. Homeowners/Flood Ins.
☐ I.   RESERVED
☐ J.   Interest-Bearing Acct
☐ K. RESERVED
☐ L.  RESERVED

☐ M. Defective Drywall
☐ N. Coastal Construction Control
       Line
☐ O. Insulation Disclosure
☐ P. Lead Paint Disclosure (Pre-1978)
☐ Q. Housing for Older Persons
☐ R. Rezoning
☐ S. Lease Purchase/ Lease Option
☐ T. Pre-Closing Occupancy
☐ U. Post-Closing Occupancy
☐ V. Sale of Buyer's Property
☐ W. Back-up Contract

☐ X. Kick-out Clause
☐ Y. Seller's Attorney Approval
☐ Z. Buyer's Attorney Approval
☐ AA. Licensee Property Interest
☐ BB.  Binding Arbitration
☐ CC. Miami-Dade County
         Special Taxing District
         Disclosure
☐ DD. Seasonal/Vacation Rentals
☐ EE. PACE Disclosure
☐ Other:_____
         _____
         _____

.

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24        © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.
Licensed to Alta Star Software and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**

Electronically Signed using eSignOnline™ [ Session ID : ████████-████-████-████-████████████ ]

590   **20.** **ADDITIONAL TERMS:** _____
591   *1. Sonya Salkin Slott, solely in her capacity as Ch 7 Trustee for Pompano Property Solutions Llc Case No. 24-*
592   *12395-PDR*
593   *2. All disputes arising from this contract shall be heard by the US Bankruptcy Court for the Southern District of*
594   *Florida.*
595   *3. This contract is subject to the approval of the US Bankruptcy Court for the Southern District of Florida. If the*
596   *court does not approve this contract, all parties shall be released from their obligations under this contract.*
597   *4. This property is sold "As-Is,Where-Is" with no representations, warranties, or guarantees of any kind*
598   *whether stated or implied by the Trustee and/or his professionals.*
599   _____
600   _____
601   _____
602   _____
603   _____
604   _____
605   _____
606   _____
607   _____

608                              **COUNTER-OFFER**

609   ✗ Seller counters Buyer's offer.


610               **[The remainder of this page is intentionally left blank.**
611               **This Contract continues with Line 612 on Page 13 of 13.]**

Electronically Signed using eSignOnline™ [ Session ID : ]

612 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
613 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

614 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

615 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618 *interested persons.*

619 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620 TO BE COMPLETED.

621 | ATTENTION: SELLER AND BUYER |
|---|

622 **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623 2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624 certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625 Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626 Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627 **sell property in violation of the Act.**

628 **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629 **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630 the Act.

631 Buyer: _Charles Bain_____  Date: _09/18/2024 03:57 PM_

632 Buyer: _____  Date: _____

633 Seller: _____Sonya Slott_____  Date: _09/25/2024_
     **Sonya Salkin Slott, Ch. 7 Trustee for Pompano Property Solutions LLC**

634 Seller: _____  Date: _____

635 Buyer's address for purposes of notice          Seller's address for purposes of notice
636 ~~2011 W Atlantic Blvd Apt 306~~              _____
637 ~~Pompano Beach, FL 33069~~                  _____
638 _____          _____

639 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643 retained such fees from the escrowed funds. This Contract shall not modify any offer of compensation made by
644 Seller or Listing Broker to Cooperating Brokers.

645 _Alisa B Thigpen-Matthews_____       _Jason A. Welt, Agent_____
646 **Cooperating Sales Associate, if any**          **Listing Sales Associate**

647 ___Gulfstream Real Estate Solutions_____       _Trustee Realty Inc._____
648 **Cooperating Broker, if any**                   **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24   © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.
Licensed to Alta Star Software and ID1834056.444018
**Software and added formatting © 2024 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898**

Electronically Signed using eSignOnline™ [ Session ID : ]

# EXHIBIT B

| American Land Title Association | ALTA Settlement Statement - Combined |
|---|---|
| | Adopted 05-01-2015 |

File No./Escrow No.: 2024-148
Print Date & Time: 11/20/2024  12:20 PM
Officer/Escrow Officer:
Settlement Location:   633 South Federal
Highway
5th Floor

**Palm Title Partners, LLC**
**1214002**
**633 South Federal Highway**
**5th Floor**
**Fort Lauderdale, FL 33301**

Property Address:   5311 NE 10th Ave, Deerfield Beach, FL 33064
Buyer:   Charles Bain
Seller:   Bankruptcy Estate of Pompano Property Solutions, LLC and Pro.Seo LLC
Lender:  Resicentral, LLC

Settlement Date:      December 20, 2024
Disbursement Date: December 20, 2024
Additional dates per state requirements:

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | **Financial** | | |
| | 485,000.00 | Sale Price of Property | 485,000.00 | |
| | | Deposit | | 5,000.00 |
| | | Borrower's Loan Amount | | 460,750.00 |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | 293.36 | County Taxes from 12/20/2024 to 12/31/2024 | 293.36 | |
| | 283.20 | Non-Ad Valorem from 12/20/2024 to 09/30/2025 | 283.20 | |
| | | | | |
| | | **Loan Charges to Resicentral, LLC** | | |
| | | | | |
| | | **Other Loan Charges** | | |
| | | | | |
| | | **Impounds** | | |
| | | | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| 795.00 | | Title - Settlement Fee to Palm Title Partners, LLC | 795.00 | |
| | | Title - Owner's title insurance (Optional) to Old Republic National Title Insurance Company/ATFS | 2,500.00 | |
| | | Title - Lender's title insurance to Old Republic National Title Insurance Company/ATFS | 25.00 | |
| | | Title - Lender's Title Endorsements: 8.1L, 9L to Old Republic National Title Insurance Company/ATFS | 277.50 | |

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2024-148
Printed on November 20, 2024 at 12:20 PM

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | Title - Owner's Title Endorsements: 9.2O (Optional) to Old Republic National Title Insurance Company/ATFS | 250.00 | |
| 200.00 | | Title - Title Search and Examination to Palm Title Partners, LLC | | |
| 304.00 | | Title - Lien Search to PropLogix | | |
| | | Title - Survey to Pinnell Survey | 495.00 | |
| 15.75 | | Title - E-Recording Fee ($5.25 per Document) to Simplifile | 10.50 | |
| | | | | |
| | | **Commission** | | |
| 19,400.00 | | Real Estate Commission 4% to Trustee Realty, Inc. | | |
| 9,700.00 | | Real Estate Commission 2% to Gulfstream Real Estate Solutions | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| 55.50 | | Recording Fees  Deed: $27.00  Mtg: $129.00 Release: $18.50 | 156.00 | |
| 3,395.00 | | Deed Tax to State of Florida | | |
| | | Mortgage Intangible Tax to State of Florida | 921.50 | |
| | | Mortgage Tax to State of Florida | 1,612.80 | |
| | | | | |
| | | **Payoff(s)** | | |
| 75,000.00 | | Payoff and Satisfy Municipal Liens - City of Deerfield Beach | | |
| 10,827.15 | | Payoff and Satisfy Tax Lien - 2023 | | |
| 11,830.78 | | Payoff and Satisfy Tax Lien - 2024 | | |
| 315,480.98 | | | | |
| 2,293.38 | | Payoff and Satisfy County Liens - Broward County Water | | |
| | | | | |
| | | **Miscellaneous** | | |
| 50.00 | | Document Delivery Fee (Postage/Courier) to Palm Title Partners, LLC | 50.00 | |
| 50.00 | | Certified Copy of Bankruptcy Sale Order - Reimbursement (Estimated) to Palm Title Partners, LLC | | |
| | | | | |
| **Seller** | | | **Borrower/Buyer** | |
| Debit | Credit | | Debit | Credit |
| 449,397.54 | 485,576.56 | **Subtotals** | 492,669.86 | 465,750.00 |
| | | Due From Borrower | | 26,919.86 |
| 36,179.02 | | Due To Seller | | |
| **485,576.56** | **485,576.56** | **Totals** | **492,669.86** | **492,669.86** |

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2024-148
Printed on November 20, 2024 at 12:20 PM

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement.  We/I authorize Palm Title Partners, LLC to cause the funds to be disbursed in accordance with this statement.

_____

Charles Bain

**Bankruptcy Estate of Pompano Property Solutions, LLC**

By:_____
      Sonya Salkin Slott, Chapter 7 Trustee

**Pro.Seo LLC**

By:_____
      John Standart, Managing Member

_____

Escrow Officer

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2024-148
Printed on November 20, 2024 at 12:20 PM